No. 24,524.

T. E. MILLER, *Appellee,* v. C. L. BROSIUS, G. A. BOWEN and H. A. RICHARDS as TRUSTEES of THE DEMOURE OIL SYNDICATE, *Appellants.*

SYLLABUS BY THE COURT.

1. CONTRACT—*To Drill Oil Well to a Certain Depth—Drilling Stopped by Consent—Further Drilling Rendered Impossible by Defendant—Plaintiff Entitled to Pay for Drilling Done.* Under a contract to drill an oil well for a stipulated sum to a depth of 2800 feet, unless oil be found in paying quantities before reaching that ·depth, which contained a provision that if a showing of oil is found the drilling shall cease and the owners of the lease shall be notified, the purpose of the provision being to enable the owners to test out the showing, and where, at a depth of 2763 feet a showing of oil is found, the drilling stopped, the owner notified, and he takes charge of the well and tests it out and 'in so doing plugs the bottom of the well so it is not possible to drill deeper, *held,* the owner is not justified in refusing to pay the contract price for the drilling of the well because the driller did not complete the drilling to a depth of 2800 feet.

2. SAME—*Provision for Pulling Casing Interpreted and Rights of Parties Determined.* A well drilling contract provided that on completion of the well the driller should pull the casing. The well, when completed, had six, eight, ten and twelve inch casing. The driller pulled the eight and ten inch casing, but in pulling the twelve inch casing it came apart 300 feet down and the balance of it could not be pulled without pulling the six inch casing. This the owner refused to permit for the reason that it would spoil the well. In a suit involving the amount due the driller, in which there were many claims and counter claims and much conflicting testimony, the par- ·ties advised the court that they wanted the judgment and decree of the court to determine all matters between them, *held,* the court was authorized to deduct from the sum due the driller the estimated cost of pulling the balance of the twelve inch casing and relieve the driller from that duty.

Appeal from Butler district court; ALLISON T. AYRES, judge. Opinion filed June 9, 1923. Affirmed.

*R. L. Holmes, C. G. Yankey, W. E. Holmes, D. W. Eaton,* all of Wichita, and *A. F. Williams,* of El Dorado, for the appellants.

*R. B. Leydig, K. M. Geddes, E. W. Grant, T. A. Kramer,* and *George J. Benson,* all of El Dorado, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This is an action to recover upon a contract for drilling an oil well. A jury was waived, there was a trial to the court and judgment for plaintiff, from which the appellants have appealed.

The contract provided for the appellee to drill a well on a certain tract of land to a depth of 2800 feet, unless oil or gas is found in paying quantities at a lesser depth. It contained the further provision: "It is further understood and agreed that in the event the drill at any time strikes a sand showing oil, then, in that event, the party of the first part is to stop drilling operations and immediately notify parties of the second part." It was shown at the trial and not controverted that this last provision was for the purpose of enabling the owners to take charge of the well in the event a showing of oil was found and test it out to see if it would be a paying find. Under this contract the appellee drilled the well to a depth of 2763 feet, where he encountered a showing of oil. He then stopped drilling, the appellants were notified, in fact, a representative of the appellants was at the well when the showing of oil was encountered, and appellants took charge of the well to test it out. Appellants had charge of the well in this process of testing it out, and working with it in one way and another, for several months, and in doing so, among other things, they plugged the bottom of the well with seven feet of iron filings, lead plugs, and other material which made it impossible to drill deeper. Appellants then notified the appellee to come and pull the casings. Appellants now make the point that the contract called for a well to be drilled to a depth of 2800 feet unless oil or gas was found in paying quantities before it had reached that depth. It is conceded by appellee that the finding was not in paying quantities, hence appellants contend that appellee cannot recover because he has not completed his contract; that he never drilled the well to a depth of 2800 feet, and they say it is primer law that one who undertakes to perform a specified work for a specified sum of money, cannot recover the contract price unless he completes the work. Well, it is also primer law that where one party to the contract, by his own act, makes it impossible for the other to fully perform, he cannot be heard to complain of the failure to perform by such other party. It is clearly shown by the evidence in this case that when this showing of oil was found appellants did not want the well drilled any deeper until it was tested out, and from the nature of the business, it would have been folly to have requested or to have permitted the appellee, at that time, to drill this well thirty-seven feet deeper simply in order that the strict letter of the contract, as to the depth in feet, should be complied with. These people were drilling for oil. If they found it, that was what they wanted, and it is ab-

solutely immaterial to them whether they struck it at 2763 feet or at 2800 feet, and certainly the appellants did not want to ruin an oil well by drilling through an oil sand and possibly encountering water, which would ruin the well. This is clearly shown by the testimony of the appellants. And appellants say in their brief, "Manifestly after a showing of oil was encountered in the well, they (the appellants) did not wish their chance of paying production to be lost. Upon the encountering of the oil showing it is to the interest of the appellants that sufficient test be made of the showing to determine whether or not it was a commercial production." It is further clearly shown by the evidence that after the test was completed in the manner in which the test was made by the appellants in this case, by the plugging of the hole at the bottom, which was done upon the theory that perhaps the well had already been drilled a few feet too deep, and that some water showing in the well could be stopped by such plugging, it would have been impossible for the well to have been drilled to a greater depth. There is no merit in appellant's contention on this point.

The drilling contract provided that appellants should furnish certain casing, which they owned, and that appellee should furnish other casing which he owned, for which appellants were to pay him a rental. It was further agreed that, in the event appellants desired to buy a part of appellee's casing, upon the completion of the well, they could do so at a price fixed in the contract. When the well was nearly completed appellants desired to purchase the six and three-quarter inch casing belonging to appellee then in the well and its value was computed and the money deposited in the bank in escrow, together with an escrow agreement, which provided that this particular casing should be left in the well, and that appellee should pull the other casing, at which time he was to have the money deposited in escrow. There was, also, a provision in the original contract requiring appellee to pull the casing which should be pulled when the well was completed. After appellants had tested the well to their satisfaction, they notified appellee to pull the casing, that is, they wanted the six and three-quarter inch casing left in the well and desired that he pull the eight, ten and twelve inch casing. He did pull the eight and ten inch casing and in trying to pull the twelve inch casing it parted about 300 feet from the top of the ground, and the rest of the twelve inch casing, between 400 and 500 feet, could not be pulled for the reason that it was impossible to get hold of it

Miller v. Brosius.

except by putting tools down on the inside of the casing. This would necessitate the pulling of the six and three-quarter inch casing. This the appellants would not permit to be done for the reason that it would permit the well to cave further down and ruin it, they still having hopes that they might be able to make a producing well out of it. Appellants now make the point that the appellee was not entitled to his contract price for drilling the well, and not entitled to the money placed in escrow for the payment of the six and three-quarter inch casing, because of the fact that he did not complete his task of pulling the casing, there being a part of the twelve inch casing still in the well. At the trial, in addition to the matters above mentioned, there were claims and counter claims which each party had against the other for various matters growing out of the well drilling contract, concerning all of which items evidence had been offered before the court. Upon the request of the parties made in open court that the court determine all matters between the parties growing out of the drilling of this well, so there need be no further controversy or litigation, the court, upon evidence offered, estimated the probable cost of pulling the balance of the twelve inch casing at a later date, when appellants were willing that the six and three-quarter inch casing should be pulled, if such time ever came, and deducted such estimated cost from the money due appellee. This seems to be a proper disposition of the question. In fact, appellants are not complaining especially about that. Their contention is that the appellee did not pull all this casing as he had, by the terms of his contract, agreed to do, and hence, that he is not entitled to any of the money. Under the disposition of this made by the trial court, there can be no merit in appellants' contention. The judgment of the court below is affirmed.